IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-177-FL

| | |
|---|---|
| CHARLES CANNON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 30 & 34). The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-30) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-34) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB") on November 16, 2007 alleging that he became unable to work on May 1, 2007. (Tr. 31). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled

1

during the relevant time period in a decision dated February 25, 2010. *Id.* at 31-41. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on October 6, 2010, rendering the ALJ's determination as Defendant's final decision. *Id.* at 22-26. Plaintiff filed the instant action on December 1, 2010. (DE-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
>
> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453,

2

1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
>
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2007. (Tr. 33). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) borderline intellectual functioning; 2) mood disorder; 3) anxiety disorder; 4) degenerative disc disease; and 5) osteoarthritis of the knees. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 34. Based on the medical record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain exceptions. *Id.* at 36.

The ALJ then determined that Plaintiff was not able to perform any past relevant work. *Id.* at 39. However, based on the testimony of a vocational expert ("VE"), the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. at 39-40. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of her decision. *Id.* at 40-41. These determinations were supported by substantial evidence, a summary of which now follows.

Plaintiff was examined on December 3, 2007. *Id.* at 223-227. His chief complaints were bright red blood in his stool, abdominal pain, and back pain. *Id.* at 223. He also reported a history of low back pain. *Id.* According to Plaintiff, this pain occurred daily and he rated it "10/10", although he also asserted that he did not take any pain medication. *Id.* Straight leg testing was negative. *Id.* at 224. Plaintiff was diagnosed with: 1) chronic lower back pain, possible sciatica; 2) abdominal pain, undetermined etiology; 3) hemorrhoids; 4) nicotine use; 5) depression; and 6) right knee pain with effusion. *Id.*

Dr. Greig V. McAvoy examined Plaintiff on February 15, 2008. *Id.* at 228-232. Plaintiff was described as an "active independent individual." *Id.* at 232. He ambulated normally. *Id.* The swelling in his right knee was only mild and no effusion was noted. *Id.* at 232. According to Dr. McAvoy, Plaintiff demonstrated: 1) normal motor strength; 2) full movement of the hips and knees; 3) normal motion of the lumbar and cervical spine; and 4) full motion of his shoulders, elbows and hands. *Id.* Straight leg testing was negative. *Id.* X-rays showed normal alignment of the spine and normal appearing hip joints. *Id.* There was no evidence of spondylolisthesis. *Id.*

On March 5, 2008, Plaintiff was examined by Dr. Satish Kumar. *Id.* at 233-238. Plaintiff could squat, although he had difficulty standing again. *Id.* at 235. He was capable of

sitting for 30 minutes and standing for about an hour. *Id.* In addition, Plaintiff could carry 30 pounds. *Id.* Dr. Kumar stated that "walking is no problem" for Plaintiff. *Id.* It was specifically noted that Plaintiff did not require a cane or a walker. *Id.* at 237. According to Dr. Kumar, "Plaintiff is taking minimal amount of medication and he is walking pretty well and fast . . . [h]e can take his shoes and socks off and put them back without any problems." *Id.* at 238.

Dr. David Dalsimer examined Plaintiff on March 28, 2008. *Id.* at 454-455. Plaintiff stated he had to quit his profession as a carpenter "due to pain in his knees." *Id.* at 454. Plaintiff reported back problems since he was a teenager and treatment in the past by chiropractors. *Id.* Physical examination of Plaintiff's knees was normal. *Id.* Specifically, Dr. Dalsimer noted no acute problems and stated that the chronic changes in Plaintiff's knees were "consistent with the patient's age and profession." *Id.* at 455. Dr. Dalsimer recommended conservative treatment for osteoarthritis. *Id.* Finally, Dr. Dalsimer opined that Plaintiff "is able and capable of working as a carpenter, but will have to restrict some of his activities for safety." *Id.* On April 4, 2008, Plaintiff complained of musculoskeletal pain in multiple areas, although Dr. Dalsimer stated there were no objective findings to explain this pain. Examination of the knees, hips, and back were all normal. *Id.* at 453. Again, Dr. Dalsimer recommended conservative treatment and reiterated that Plaintiff was capable of regular working activities. *Id.*

Plaintiff underwent a MRI of the lumbar and thoracic spine on April 10, 2008. *Id.* at 250-251. The impression was: "1. Multilevel thoracic disc protrusions cause central canal narrowing at several levels. 2. Bilateral L5 pars defects with minimal anterolisthesis and no appreciable foraminal stenosis. 3. Left L3-L4 disc herniation likely impinges the exiting left L3 nerve." *Id.* at 251.

Plaintiff's RFC was evaluated on April 22, 2008. *Id.* at 266-273. It was determined that

Plaintiff could: 1) occasionally lift and/or carry more than 50 pounds; 2) frequently lift and/or carry more than 25 pounds; 3) stand and/or walk (with normal breaks) for about six hours in an eight hour workday; 4) sit (with normal breaks) for about six hours in an eight hour workday; and 5) could push and pull with no limitations other than those noted for lifting and carrying. *Id.* at 267. He was deemed capable of stooping occasionally and climbing, balancing, kneeling, crouching, and crawling frequently. *Id.* at 268. No manipulative, visual, communicative, or environmental limitations were noted. *Id.* at 269-270.

Dr. Lori Peele drafted a letter on May 2, 2008 which briefly summarizes Plaintiff's symptoms. *Id.* at 286. Other than noting, without elaboration, that Plaintiff "had to quit" work because of his knee pain, Dr. Peele does not describe how these symptoms affected Plaintiff's functioning. She also notes that Plaintiff's "most debilitating symptoms" were his anxiety and depression. *Id.*

On May 5, 2008, Plaintiff was examined by Dr. Robert Radson. *Id.* at 287-292. His thoughts were organized and clear. *Id.* at 290. Several intelligence scale tests were administered. *Id.* at 290. Specifically, Plaintiff was administered the Wechsler Adult Intelligence Scale test and received a Verbal IQ of 71, a Performance IQ of 84, and a Full Scale IQ of 75. *Id.* at 290. Plaintiff was diagnosed with borderline intellectual functioning. *Id.* at 292. Ultimately, it was determined that Plaintiff "was able to understand and follow instructions . . . [and] able to perform simple, repetitive tasks." *Id.* at 291. However, it was also noted that Plaintiff "may have difficulty relating to others in a typical work setting. . . . [and] tolerating the stress and pressures associated with [a] typical workday given the results of the cognitive instrument." *Id.* at 291. Finally, Dr. Radson stated that Plaintiff may need assistance with personal, social and occupational competence. *Id.* at 292.

Dr. Lori Brandon Souther assessed Plaintiff's RFC on May 14, 2008. *Id.* at 293-306. It was determined that Plaintiff's impairments did not precisely satisfy the diagnostic criteria of Listings 12.02 and 12.04. *Id.* at 294, 296. Plaintiff was deemed to have moderate limitations with regard to: 1) activities of daily living; 2) maintaining social functioning; and 3) maintaining concentration, persistence and pace. *Id.* at 303. In addition, Plaintiff was moderately limited in his ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) complete a normal workweek; 5) interact appropriately with the general public; 6) accept instructions and respond appropriately to criticism from supervisors; and 7) respond appropriately to changes in the work setting. *Id.* at 307-308. He was not significantly limited in every other rated ability. *Id.* Finally, it was determined that Plaintiff retained the mental capacity for simple, routine, repetitive tasks in a low-stress setting with minimal social demands. *Id.* at 309.

On May 29, 2008, Plaintiff was examined by physicians at Carolina Regional Orthopaedics. *Id.* at 450-52. Plaintiff reported no spinal surgeries, no physical therapy, no brace usage, and no medications. *Id.* at 452. On examination, Plaintiff was able to heel-and-toe walk without difficulty. *Id.* at 451. He had full motor strength in both lower extremities and his patellar and achilles tendon reflexes were intact. *Id.* Plaintiff reported pain with forward flexion, extension, lateral side bending, and axial rotation. *Id.* He also reported decreased sensation in the left leg. *Id.* Plaintiff was instructed to start a new six day medication, physical therapy, and epidural steroid injections. *Id.* at 450.

On June 2, 2008, Plaintiff received his first lumbar epidural steroid injection. *Id.* at 449. He tolerated the procedure well and ambulated from the procedure table to the post-op area in stable condition. *Id.* at 449. Likewise, on June 17, 2008, Plaintiff underwent another epidural

7

steroid injection and was able to ambulate afterwards. *Id.* at 448. Plaintiff reported on June 23, 2008 that the epidural steroid injections did not lessen his pain, but the pain medication he received after hemorrhoid surgery did reduce his pain. *Id.* at 447. Plaintiff "did not start the physical therapy" that was prescribed. *Id.* A physical examination "remained unchanged." *Id.* Specifically, Plaintiff could heel-and-toe walk without difficulty and had full motor strength in both lower extremities. *Id.* Following a review of Plaintiff's MRI and plain films, Dr. David Miller opined that he "did not think that at this time any surgical intervention would help this patient with his pain . . . [w]e recommend that the patient follow up with Dr. Patel for pain management." *Id.*

Dr. Patel examined Plaintiff on July 30, 2008. *Id.* at 444-445. Plaintiff reported his pain was 10/10, increased with movement, and decreased with medication. *Id.* at 445. Plaintiff had difficulty squatting down due to knee pain, but was able to ambulate on his heels and toes without assistance. *Id.* at 444. He had tenderness over the thoracic, lumbar and cervical paraspinals, however, there was no obvious swelling of any joints. *Id.* Muscle stretch reflexes were 2+ in his knees and ankles and were symmetrical in his upper limbs. *Id.* He had full flexion and lateral rotation in his cervical spine. *Id.* Furthermore, he had intact sensation in his upper and lower limbs. *Id.* Moreover, Plaintiff was not in acute distress and was described as a "well nourished, well built, middle aged man who looks younger than his age." *Id.* Dr. Patel's impression was: 1) chronic neck, mid back and lower back pain; and 2) chronic opiate use. *Id.* He recommended that Plaintiff undergo a whole body bone scan, increase Lortab, try Neurontin and begin physical therapy. *Id.*

Plaintiff underwent a whole-body bone scan on August 4, 2008. *Id.* at 337. The results were unremarkable. *Id.*

Dr. Anthony Carraway examined Plaintiff on August 14, 2008. *Id.* at 383-388. Plaintiff's thoughts were logical and goal directed and no thought disorder was present. *Id.* at 384. His affect was frustrated and his mood was worried. *Id.* He was diagnosed with: 1) mood disorder due to chronic pain with depressive symptoms; 2) anxiety disorder, not otherwise specified; and 3) a history of borderline intellectual functioning. *Id.* at 384-385. Dr. Carraway stated that Plaintiff had only mild impairment of short-term memory, attention and concentration. *Id.* at 386. In addition, Plaintiff's ability to understand, retain and perform instructions was only mildly impaired. *Id.* It was also noted that Plaintiff's "ability to perform simple repetitive tasks and to persist at those tasks primarily would be limited by his objective physical findings as well as by his somatic complaints of pain." *Id.* Plaintiff's stress tolerance was deemed moderately impaired. *Id.* Finally, Dr. Carraway determined that Plaintiff would be able to handle any awarded benefits in his best interest. *Id.*

From August 11, 2008 until August 29, 2008 Plaintiff underwent physical therapy. *Id.* at 363-368. However, Plaintiff reported no decrease in his low back pain and still had pain when lifting. *Id.* Plaintiff reported "difficulty and intermittent pain that increases with bending, lifting, kneeling, [and] prolonged standing." *Id.* at 363. He had limited range of motion in lumbar extension resulting in pain. *Id.* The physical therapist observed that Plaintiff had no motor or sensory deficits. *Id.* at 366. The physical therapist noted that Plaintiff was "not working – pending status for disability" and Plaintiff had no social/work history restrictions. *Id.* at 365. On August 29, 2008, it was noted that Plaintiff was being discharged because he had met his goals. *Id.* at 367.

Dr. Divya J. Patel examined Plaintiff on August 25, 2008. *Id.* at 375. Plaintiff rated his pain as "5/10." and stated that his medications were "not helping much." *Id.* However, upon

9

examination, Plaintiff was able to walk without using an assistive device. *Id.* at 375. On October 6, 2008, Plaintiff complained of pain in his "neck, bilateral upper limb, midback, low back and bilateral lower limbs, bilateral knees, bilateral feet, bilateral hands, wrist and fingers." *Id.* at 374 He rated this pain as "8/10." *Id.*

On August 27, 2008, Plaintiff was examined by Dr. Omar Howard. *Id.* at 421. Plaintiff complained of chronic pain, depression, and anxiety. *Id.* On September 29, 2008, Plaintiff complained of depression and anxiety, although he also indicated his anxiety was "fairly controlled" with medication. *Id.* at 417.

Plaintiff's RFC was assessed by Dr. Brett Fox on October 1, 2008. *Id.* at 389-406. It was determined that Plaintiff's impairments did not precisely satisfy the diagnostic criteria of Listings 12.04, 12.05, and 12.06. *Id.* at 389. Dr. Fox indicated that Plaintiff was moderately limited in his ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) interact appropriately with the general public; and 5) respond appropriately to changes in the work setting. *Id.* at 403-404. He was not significantly limited in every other rated ability. *Id.* Ultimately, Dr. Fox opined that Plaintiff was able to sustain sufficient attention to complete simple, routine, repetitive tasks for extended periods. *Id.* at 405.

On October 2, 2008, Dr. Janet Johnson-Hunter evaluated Plaintiff's RFC. *Id.* at 407-414. It was determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; 4) sit (with normal breaks) for a total of about six hours in an eight hour workday; and 5) push and/or pull with no limitations other than those already noted for lifting and carrying. *Id.* at 408. No postural, manipulative, visual, or communicative limitations were

10

noted. *Id.* at 410-411. Dr. Johnson-Hunter noted that Plaintiff should avoid hazards such as machinery and heights. *Id.* at 411. Otherwise, Plaintiff had no environmental limitations. *Id.*

Dr. Patel examined Plaintiff on October 6, 2008. *Id.* at 437. No changes were observed. *Id.* Plaintiff was diagnosed with chronic pain in multiple areas. *Id.*

During dermatology appointments on October 14 and 27, 2008, Plaintiff had a pleasant mood and affect. *Id.* at 426, 429.

On November 3, 2008, Plaintiff complained of pain which he rated as 8/10. *Id.* at 431. It was noted that Plaintiff "has been diagnosed with cancer, questionable basal cell cancer and is being treated by dermatologist for this." *Id.* Plaintiff was again able to ambulate without an assistive device, and recent blood work was "essentially normal." *Id.*

Dr. Patel drafted a handwritten note "to whom it may concern" on December 3, 2008. *Id.* at 496. He stated that Plaintiff was unable to work, although no specific reasons are given in support of this opinion other than: 1) Plaintiff was receiving care for pain management; and 2) would be consulting a orthopedic spine surgeon in the near future. *Id.*

On March 20, 2009, Dr. Kurt Voos, M.D., examined Plaintiff. *Id.* at 519-521. Plaintiff reported "[h]e is currently being followed by Divy Patel, M.D.[,] at Carolina Regional Orthopedics for pain management." *Id.* Dr. Voos observed Plaintiff "ha[d] not had any gait pattern disturbance, weakness, or giving way of the extremities." *Id.* at 519. Upon examination, Plaintiff had normal range of motion in the lumbar spine. *Id.* at 520. Although Plaintiff complained of pain in the low back, buttock, and thigh area bilaterally at extremes of extension, there was "no paravertebral tenderness or spasm demonstrated." *Id.* Motor testing revealed normal strength in all the major muscle groups in his lower extremities. *Id.* Plaintiff had no objective sensory deficit. *Id.* His deep tendon reflexes were "1+ bilaterally at the knees and

11

ankles." *Id.* Dr. Voos discussed with Plaintiff the abnormal findings from the recent MRI and x-rays. *Id.* Plaintiff was advised to undergo a "myelogram and a post contrast CT of the cervical and lumbar spine for further definition." *Id.* at 521.

Plaintiff was examined by Dr. Richard Frazier on May 26, 2009. *Id.* at 465. Upon examination, Plaintiff's back was not tender, although Plaintiff jumped when his back was touched. *Id.* His reflexes and gait were normal. *Id.* Dr. Frazier encouraged Plaintiff to exercise more and "to get more involved in something that will relieve some of the depression." *Id.* On August 25, 2009 it was noted that Plaintiff had just undergone back surgery. *Id.* at 466. Plaintiff had no specific complaints and his back pain had improved. *Id.* Likewise, Plaintiff also stated that "he [was] doing much better as far as pain is concerned." *Id.* at 466. He was also sleeping better. *Id.* Dr. Frazier stated on November 30, 2009 that Plaintiff's back examination was "essentially normal" and that Plaintiff's gait was also normal. *Id.* at 467.

Dr. Marica Bijelac examined Plaintiff on June 26, 2009. *Id.* at 481. Plaintiff reported that he has symptoms of depression and nerve pain. *Id.* His symptoms were generally described as mild. *Id.* During follow-up appointments on August 17, 2009 and September 18, 2009, relatively few complaints were noted. *Id.* at 478-479. Likewise, on October 5, 2009, Plaintiff's symptoms were again generally described as mild. *Id.* at 474. On November 10, 2009, Plaintiff "appeared brighter" and was smiling through the interview. *Id.* at 470. His psychological symptoms were generally described as mild, except for sleep related symptoms, which were described as moderate. *Id.* at 470-471.

On August 4, 2009, Plaintiff underwent a posterior spinal fusion, L4 to S1. *Id.* at 487. He was discharged on August 7, 2009 and instructed to avoid all pushing, pulling, lifting, bending, twisting, riding or driving until told otherwise. *Id.* at 487-488. Dr. Voos examined Plaintiff on

12

August 17, 2009 and stated that Plaintiff was healing well. *Id.* at 507. Plaintiff's gait was stable and straight leg raising was negative. *Id.* Plaintiff's gait was stable on December 2, 2009, and he had good range of motion of the hips. *Id.* at 506. Straight leg raising was again negative. *Id.* On December 9, 2009, Dr. Voos reviewed a CT scan of Plaintiff's lumbar spine. *Id.* at 505. Dr. Voos stated that Plaintiff "appears to be healing but is not there yet." *Id.*

Dr. Patel examined Plaintiff on January 13, 2010. Plaintiff complained of neck, back and knee pain, which he rated as "5/10." *Id.* at 501. On February 10, 2010, Plaintiff rated his pain as "8/10", although he was able to ambulate without an assistive device and demonstrated only slight antalgia. *Id.* at 500. He was described as "cheerful." *Id.* During a March 11, 2010 examination, Plaintiff's pain was "4/10." *Id.* at 498. Dr. Patel again noted that Plaintiff ambulated without assistance, and Plaintiff's gait was without antalgia. *Id.* His tone was normal in the upper and lower extremities bilaterally. *Id.* Plaintiff's mood was "pleasant." *Id.*

On January 25, 2010, Plaintiff was examined by Dr. Voos. *Id.* at 502. Plaintiff reported improvement in his symptoms post-surgery, although he still rated his pain as "5/10." *Id.* He did not want to participate in physical therapy. *Id.*

Plaintiff was examined by Dr. Bijelac on February 15, 2010. *Id.* at 491. He was "doing well" regarding his depression and anxiety. *Id.* Dr. Bijelac described Plaintiff's mood as "good." *Id.*

During the hearing in this matter, Plaintiff testified that he was able to sit and/or stand for about 30 minutes at a time. *Id.* at 7. He also stated that he could lift twenty pounds. *Id.* However, he stated that he was incapable of reaching overhead "to get a glass out of the cabinet." *Id.* Plaintiff indicated that he was capable of performing a few household chores, and that he also drives. *Id.* at 9. In addition, Plaintiff stated that he sometimes uses a cane when walking longer

13

distances. *Id.* at 12. He also noted that it is painful for him to walk. *Id.* Furthermore, Plaintiff testified that he had difficulty using his hands and that he often dropped things. *Id.* at 14. Because of his back and knee pain, Plaintiff stated that he frequently needed to lie down. *Id.* When asked about his depression, Plaintiff stated that he does not "want to interact [his] family" and that he has difficulty getting out of bed. *Id.*

Finally, the VE in this matter testified that a person with Plaintiff's RFC could perform jobs which existed in significant numbers in the national economy. *Id.* at 18-19.

Based on this record, the ALJ made the following specific findings:

> Listings 1.02 and 1.04 were considered. However, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed, physical impairment.
>
> Listings 12.04, 12.05, and 12.06 were also considered, but the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of these listings . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The objective medical evidence does not document factors indicative of pain of the intense, protracted and disabling nature which the claimant alleges, such as persistent and significant weight loss, muscle wasting, muscle atrophy or weakness, significant limitation of motion, neurological deficit or other objective, observable findings often associated with pain of the intense nature reported by the claimant . . .
>
> As for the opinion evidence, on May 5, 2008, a consultative psychological examiner noted that the claimant was able to understand and follow directions and perform simple, repetitive tasks. However, the claimant appeared to have difficulties relating to others or handling work stresses during a typical workday. (Exhibit 10F) On August 26, 2008, Dr. Carraway opined that the claimant would have mild impairment regarding his

> short-term memory and ability to concentrate. However, his ability to perform simple, repetitive tasks would be limited by his complaints of pain. The claimant would also be moderately impaired in his ability to tolerate work stresses and interact with others. (Exhibit 19F) As the opinions do not conflict with the evidence or the residual functional capacity discussed above, they are found to be persuasive.
>
> On May 2, 2008, Lori Peele, M.D., wrote a letter indicating that the claimant was being treated by an orthopedist for back pain. She noted, "He also complains of bilateral knee pain, worse with kneeling, and climbing stairs. He had to quit work because of this." She went on to note that the claimant's most debilitating symptoms were caused by anxiety and depression. However, she did not opine that the claimant was disabled or unable to work. In addition, she did not indicate what kind of treating relationship, if any, she had with the claimant and there are no office notes in the record showing that the claimant was treated by Dr. Peele. (Exhibit 9F) For these reasons, the letter is found to be unhelpful regarding the claimant specific mental and/or physical limitations and is given no weight.
>
> Based on the statements of the claimant, the medical evidence, and the medical opinions discussed above, it is clear that the claimant has some limitations in his ability to engage in certain activities. However, the evidence establishes that he is still able to perform many work-related activities within a restricted range of light work.
>
> (Tr. 34-39).

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for her resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what

15

Plaintiff requests this Court do, his claims are without merit. The undersigned will nonetheless address Plaintiff's specific assignments of error.

**The ALJ properly assessed Plaintiff's credibility**

Plaintiff contends that the ALJ incorrectly assessed his credibility. The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig, 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See* Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's

16

statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4.

Here, the ALJ followed these standards in assessing Plaintiff's credibility. The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment. Accordingly, this assignments of error is without merit.

**The ALJ properly assessed Plaintiff's RFC and presented a proper hypothetical to the VE**

Plaintiff next contends that the ALJ presented an improper hypothetical to the VE prior to the VE's testimony. An ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Koonce v. Apfel, 166 F.3d 1209 (4th Cir.1999) (unpublished opinion). The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000). Here, the hypothetical question posed to the VE by the ALJ was based on a RFC determination supported by substantial evidence and therefore accurately reflected all of Plaintiff's limitations. Therefore, it was not error for the ALJ to rely upon the VE's testimony that there were other jobs the national economy which Plaintiff could perform. This assignment of error is without merit.

**The ALJ properly weighed the medical evidence**

Plaintiff asserts that the ALJ erred in the weight she assigned Dr. Patel's medical opinions. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to

17

resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 8)(W.D.Va. 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Id. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

In her decision, the ALJ fully explained her reasoning in weighing the medical evidence. These reasons were supported by substantial evidence and, therefore, this assignment of error is without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for

Judgment on the Pleadings (DE-30) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-34) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, October 03, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE